IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIM NO. 13-317 |
| RICHARD GORDON | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its undersigned attorneys, ZANE D. MEMEGER, United States Attorney for the Eastern District of Pennsylvania, and THOMAS MOSHANG III, Special Assistant United States Attorney, respectfully submits this sentencing memorandum regarding defendant Richard Gordon, who is scheduled to be sentenced on February 21, 2014.

For over seven and a half years, defendant Richard Gordon continuously defrauded the Department of Veterans Affairs ("VA"), and ultimately converted over $178,000 in healthcare benefits and pension payments that he knew he was not entitled to receive. From June 2004 through December 2012, defendant Gordon used the identity of his brother, H.G., to receive healthcare benefits and pension payments that he was not entitled to receive because he was a fugitive felon and because he was already receiving pension payments under his actual identity. In total, the defendant converted to his own use more than $178,000 worth of federal healthcare benefits and pension payments.

For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration at the high end of the stipulated guideline range.

1

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006).

The Third Circuit has explained that the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. See also Rita v. United States, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006) (directing

2

district courts to explain all guideline determinations and final sentences, stating, "There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment."); United States v. King, 454 F.3d 187, 196-97 (3d Cir. 2006) (district courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review."). Cf. United States v. Grier, 475 F.3d 556, 571-72 (3d Cir. 2007) (en banc) (holding that the solitary statement, "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)," was insufficient to explain the district court's reasoning, and remanding for resentencing).

The government explains below its view of the proper consideration in this case of the Section 3553(a) factors, which support a sentence at the high end of the stipulated guideline range.

I.     **BACKGROUND**

On June 13, 2013, the United States Attorney for the Eastern District of Pennsylvania filed an information charging defendant Richard Gordon with one count of conversion of government property, in violation of 18 U.S.C. § 641. During his plea colloquy on July 19, 2013, defendant Gordon admitted that he unlawfully participated in a scheme to defraud the VA out of over $178,000 in benefits and pension payments and he entered a plea of guilty to the information.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Penalties.

Count One (conversion of government property): 10 years imprisonment; 3 years of supervised release; a $250,000 fine; and a $100 special assessment. Full restitution of as much as $178,607.20 may be ordered.

### B. Sentencing Guidelines Calculation.

In imposing a sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005). In this case, the Probation Office made the following guideline calculations in the PSR. Under U.S.S.G. § 2B1.1(a)(2), the base offense level for this offense is 6 (PSR ¶ 26). An additional 10 points are added pursuant to U.S.S.G. §2B1.1(b)(1)(F) because the loss exceeded $120,000 but was less than $200,000 (PSR ¶ 27). Two additional points are added pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i) because the defendant used a means of identification of another (social security number, birth certificate) to produce another means of identification (VA identification for H.G.) (PSR ¶ 28). The Probation Office next determined that zero points should be deducted because the defendant failed to provide prompt acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b) (PSR ¶¶ 23-24, 33)[1]. The Probation Office next determined that defendant's final adjusted offense level is 18 (PSR ¶ 32)[2]. Defendant has eight criminal history points, resulting in a criminal history category IV (PSR ¶ 49). As such, the Probation Office determined that the defendant faces an advisory guideline range of 41 to 51 months, and falls

---

1 Pursuant to its stipulation, the Government objects and believes that the defendant should have three points deducted for prompt, acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).

2 Pursuant to its stipulation and objection, the Government's calculation is that the defendant's final adjusted offense level is 15.

4

into Zone D of the Sentencing Table (PSR ¶¶ 79)[3]. Pursuant to U.S.S.G. § 5E1.2(c)(3), defendant faces an advisory fine guideline range of $6,000-$60,000 (PSR ¶ 87)[4].

Once the Court calculates the advisory Guideline range, it must make specific findings concerning all pertinent factors enumerated in Section 3553(a) of Title 18, which are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

---

[3] Pursuant to its stipulation and objection, the Government's calculation is that the defendant faces an advisory guideline range of 30 to 37 months, and falls into Zone D of the Sentencing Table.

[4] Pursuant to its stipulation and objection, the Government's calculation is that the defendant faces an advisory fine guideline range of $4,000-$40,000.

18 U.S.C. § 3553(a).

A full review of all pertinent factors supports the conclusion that a sentence of incarceration at the high end of the stipulated guideline range is appropriate in this case.

## III. ANALYSIS

### A. Importance of the Guideline Range.

The Sentencing Guidelines stand as an essential consideration in this case. The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" id. at 108-09 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Kimbrough, 552 U.S. at 109 (quoting Rita v. United States, 551 U.S. 338, 350 (2007)).

Significantly, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the

6

Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments.  The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of Booker that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.*"  Booker, 543 U.S. at 264-65 (emphasis added).  The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines.  Id. at 263.  We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'"  Cooper, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original).

Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."  Gall, 552 U.S. at 50 n.6.

      B.     <u>Consideration of the § 3553(a) Factors.</u>

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing.  Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines.  The other 3553(a) factors also point to this conclusion.

Regarding the nature and circumstances of the offense, the defendant engaged in a serious long term fraud scheme. Defendant Gordon knew that he was ineligible to receive healthcare benefits and pension payments from the VA while he was a fugitive felon. He then used the identity of H.G., to obtain benefits that he was not entitled to receive for almost two years. He also began double dipping VA pension payments by obtaining a second VA pension under H.G.'s identity, while simultaneously receiving a pension under his own name. For almost a year and a half before his own VA pension payments were stopped for being a fugitive felon, the defendant was receiving two VA pensions. Furthermore, instead of being satisfied with just receiving a single VA pension under H.G.'s name, defendant Gordon took the affirmative steps to resume the double dipping by getting his own VA pension payments resumed once his fugitive felon status was lifted. As a result of his long term and ongoing conduct, he knowingly converted $178,607.20 in healthcare benefits and VA pension payments that VA intended for veterans who actually qualified for such benefits.

Furthermore, Gordon took active steps along the way to continue his fraud scheme. Over the course of his eight and a half year long fraud scheme, Gordon had numerous contacts with VA, repeatedly made false statements pretending to be H.G., and constantly changed H.G.'s mailing addresses and direct deposit information. He opened numerous bank accounts in H.G.'s name, and frequently redirected VA direct deposit payments into those accounts. When VA-Office of the Inspector General agents interviewed him in November 2012, he initially claimed that H.G. was living with him, but was away visiting a sister in New Jersey. Gordon then went so far as to include a woman in his attempted cover-up by calling her and indicating that she reported that H.G. was no longer there. Gordon then continued to

8

change his story until the VA agents were able to convince him to come clean and admit his fraudulent scheme.

Through these actions, defendant Gordon jeopardized the administration of a federal benefits program that is designed to assist disabled veterans who qualify for such benefits. Fraud involving benefits programs designed to assist disabled veterans is intolerable and particularly egregious where, as here, defendant's scheme directed federal funds to satisfy his own greed. Although he claims to be using the double dipped benefits solely to support a veterans assistance program, a review of the defendant's bank records does not support this assertion (see Exhibit A). Each month the VA would deposit H.G.'s VA pension payment and over the course of just a few days, Gordon would make numerous withdrawals (often on the same day), until the account balance was practically empty. Furthermore, defendant Gordon was receiving two VA pensions well before he started his veterans support group (which also solicits donations).

Defendant Gordon has committed serious crimes that require punishment that is consistent with that contemplated by the applicable sentencing guidelines range. As such, his crimes fall squarely within the class of cases to which the applicable guidelines are addressed, and in consideration of the repeated and multiple nature of the offenses, as set forth in Section 3553(a)(1), counsels in favor of a sentence at the high end of the stipulated guideline range.

Regarding the history and characteristics of the defendant, Gordon has a significant criminal history that also supports a sentence at the upper end of the stipulated guideline range. Specifically, Gordon has a life long history of drug, fraud and theft related offenses which includes over 20 arrests and 11 convictions (PSR ¶¶ 37-61). Furthermore, he

9

started and continued his current fraud scheme while he was on probation and after numerous prior probation violations (PSR ¶¶ 46-47).

The most significant characteristics of the defendant is his consistent untruthfulness, and his disrespect of the judicial process. As stated above, Gordon's current offenses and most of his past offenses were crimes involving dishonesty. He repeatedly lied to federal agencies and investigators until he was caught in his current scheme. He has a history of giving false information to probation departments, such as his repeated denial of drug use and his telling the Chemung County Probation Department that he received a battlefield commission to Second Lieutenant while serving in Vietnam. He falsely holds his organization out as being "certified" when no such certification exists, and himself out as being an "Upgrade Consultant" for the Department of the Navy, which has never heard of the defendant (PSR ¶ 24). As such, it is apparent that the defendant is more than willing to stretch the truth when he feels as though it will benefit him in some way.

Most significantly, has been the defendant's blatant disregard of the Court's release conditions. Specifically, defendant Gordon initially did not return his financial statements and failed to make himself available for a home visit. Furthermore, while awaiting sentencing on the current case, the defendant committed other offenses by possessing and using illegal drugs on numerous occasions, as well as failing to report to probation. This is not surprising considering the defendant exhibited similar behavior when he was placed on probation before various state courts. Thus, the history and characteristics of the defendant (§ 3553 (a)(1)) further support a sentence of incarceration at the high end of the stipulated guideline range.

It is also clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. § 3553(a)(2).

Deterrence is a particularly important consideration in this case. It is simply impossible to search for and root out fraud in every VA benefits claim that is made among the thousands of such claims that are made each year. The integrity and stability of these benefits programs depend to a significant extent on the honesty of those who seek such benefits. Where, as here, efforts to defraud the program are undertaken, the sentence imposed must be sufficiently severe to deter others who may contemplate similar fraud schemes. Gordon was able to conceal his conduct and it went undetected for years. A substantial sentence of incarceration would protect the public by deterring others from engaging in the deceit and fraud conducted by Gordon.

Finally, the government also requests that this Court consider the impact of these crimes upon the victim in this case, the Department of Veterans Affairs, an agency of the United States. By the defendant's own admission, he defrauded the agency out of $178,607.20. He did so without regard for the cost of his conduct. Restitution, which is mandatory, should be paid on a schedule determined by this Court.

## IV.   CONCLUSION

All of the appropriate considerations of sentencing favor the imposition in this case of a sentence of incarceration at the high end of the stipulated guideline range. For all of

these reasons, the government respectfully recommends that the Court sentence the defendant to a period of incarceration at the high end of the stipulated guideline range, and further requests, pursuant to the plea agreement and the Mandatory Victims Restitution Act of 1996, restitution in the amount up to $178,607.20 and the imposition of a special assessment.

        Respectfully submitted,

        ZANE D. MEMEGER
        United States Attorney


        /s/ Thomas Moshang III
        THOMAS MOSHANG III
        Special Assistant United States Attorney

Dated: February 18, 2014

## **CERTIFICATE OF SERVICE**

I certify that on this day I caused a true and correct copy of the Government's Sentencing Memorandum to be served by electronic court filing on the below counsel for the defendant:

Nina Spizer, Esquire
Assistant Federal Defender
Defender Association of Philadelphia
The Curtis Center Building
601 Walnut Street – Suite 540 West
Independence Square West
Philadelphia, PA 19106

/s/ Thomas Moshang III
THOMAS MOSHANG III
Special Assistant United States Attorney

Dated: February 18, 2014